UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

IN RE:

M.J.H. LEASING, INC. and
M.A.T. MARINE, INC.,
DEBTOR.

CHAPTER 7
CASE NO. 04-18802-WCH
CASE NO. 04-19106-WCH
(Jointly Administered)

MEMORANDUM OF DECISION REGARDING DISCLOSURE STATEMENT
AND OBJECTIONS

I. INTRODUCTION

The issue before the Court is whether the disclosure statement of M.J.H. Leasing, Inc. and M.A.T. Marine, Inc. (collectively the "Debtors") is capable of confirmation despite the objections of the United States Trustee (the "Trustee") and Gulf Insurance Company ("Gulf") to the provision which would discharge and release the principals of the Debtors. The parties dispute whether the Debtors can meet the multi-factor test to warrant such relief. For the reasons set forth below, I will enter an order sustaining the objections. The following constitutes my findings of facts and conclusions of law.

II. BACKGROUND

On April 5, 2005, the Debtors submitted their Disclosure Statement Re Joint Plan of Reorganization (the "Disclosure Statement"). In the first sentence, the Debtors explained that

1

they were submitting the Disclosure Statement along with their principals Michael and Kathleen Hallam (the "Hallams"). In the section of the Disclosure Statement entitled Background Information About the Debtors, the Debtors explained that the Hallams each started one of the Debtors and that the two corporations are operated as a single unit. "The Debtors do both marine and land-based contracting and excavating work. The Debtors operated successfully until getting into financial difficulty due to their purchase in 2002 of a Komatsu excavating machine, which imposed cash demands greater than the business was able to sustain, given the level of work it had utilizing the machine." Disclosure Statement, p. 2. The Debtors described that after filing for relief under Chapter 11, they have been able to sell the excavator, negotiate with creditors and resume profitable operations. In the Disclosure Statement, the Debtors represented as follows:

> Debtors are confident that their future cash flow will enable them to make all payments provided for under the Plan, from cash accumulated during the chapter 11 case including from the sale of the Komatsu excavator, and from future operations, and anticipate demonstrating that at the confirmation hearing to meet the feasability requirement of §1129 of the Bankruptcy Code. On their respective filing dates Debtors had essentially no cash or receivables, but as of March 1, 2005 they had about $90,000 of cash on hand from operations (plus about $130,000 in proceeds of the Komatsu sale before the amount needed to pay off the secured debt to Komatu, on which amounts Slade Ferry Trust Company also holds a lien), as well as about $345,000 of undisputed pot-petition receivables, against about $214,000 of post-petition payables.

Disclosure Statement, pp 2-3.

The Disclosure Statement further provides as follows:

> The Plan provides for the resolution of the disputed claims of Gulf Insurance Company under its Bonds and General Indemnity Agreement with the Debtors, and the satisfaction of these obligations in full under the Plan. It will provide a release and

2

> discharge of those obligations not only to the Debtors, but to the
> Hallams, individually and as Trustees of the Hallam Land Trust,
> upon the payment of the Allowed Unsecured Claims. (Gulf sued
> the Hallams individually upon the filing of the M.J.H. case and
> obtained an attachment on their home as security.) No only are the
> Hallams committed under the Plan to working for M.A.T. and thus
> enabling it to pay its debts in full as promptly possible, but they
> have also agreed to subordinate their own claims to those of their
> creditors. By providing the described release to the Hallams, the
> Plan simultaneously resolves what would otherwise be their claims
> over against the Debtors for indemnity and contribution, and
> allows all issues related to the Bonds and General Indemnity
> Agreement to be resolved with finality.

Disclosure Statement, pp. 4-5.

The Trustee objected on the grounds that the Disclosure Statement does not contain sufficient information to decide the matter of the requested release and is therefore fatally flawed. Further, she argued that the Debtors have failed to demonstrate that they could meet the multi-factor test which I applied when considering non-debtor third party releases in *In re Mahoney Hawkes, LLP,* 289 B.R. 285, 300 (Bankr. D. Mass. 2002 ).

In its objection, Gulf explained that the Hallams' obligation to Gulf arises from a general indemnity agreement which the Hallams and the Debtors signed on May 24, 2000 (the "Agreement") .[1] According to Gulf, the Agreement provides that the Debtors and the Hallams would indemnify and hold Gulf harmless for any liabilities which Gulf might incur as a result of its issuance of surety bonds on behalf of the Debtors. Gulf alleged that the Debtors and the Hallams are in default under the terms of the Agreement as a result of, *inter alia,* the bankruptcy filing and their failure to pay Gulf for the losses it incurred on the contracts which Gulf bonded

---

[1]Gulf attached the Agreement to its objection. It is a standard agreement which the Hallams signed as corporate officers and individually.

3

for M.A.T Marine. In November of 2004, Gulf filed suit against the Hallams and they assented to Gulf obtaining an attachment on their house. In March of 2005, the Hallams filed a proof of claim for their "contingent indemnity claim" based upon the Agreement.

Gulf objected to the Disclosure Statement and Plan first on the grounds that although the Debtors propose to pay creditors 100%, their ability to make such a payment relies upon too many disclosed risk factors. Second, Gulf objected to the Hallams receiving releases on the grounds that the indemnification was additional security to Gulf and to deprive Gulf of the ability to collect from the Hallams denies Gulf its an agreed-upon collateral. This is particularly evident, Gulf explained, when viewed in light of the fact that its losses are continuing.

The Debtors responded that they are a small business which could not continue but for the work of the Hallams and that, in any event, all creditors will be paid in full in 15 months.[2] The Debtors argued that their circumstances meet many of the factors set forth in *Mahoney Hawkes*. I held a hearing and took the matter under advisement.

III. Analysis

    A. The Case Law

Many courts have considered the issue of whether to enjoin an action against a principal of a debtor including the oft-cited case of *Otero Mills, Inc. v. Security Bank & Trust (In re Otero Mills, Inc.)*, 25 B.R. 1018 (D. N.M. 1982). In *Otero Mills*, the debtor filed an adversary proceeding to obtain an injunction protecting the debtor's president from a state court lawsuit on his personal guarantee. On appeal from the bankruptcy court order in the debtor's favor, the

---

[2] The Debtors represented that they will object to Gulf's secured claim and seek to subordinate the same given that through a claims adjustment process Gulf has violated the automatic stay.

4

district court agreed that the appropriate standard to apply was the traditional preliminary injunction test. *Id.* at 1021. The district court further agreed that the standard had been met given that enforcement of the guarantee at the early stages of a Chapter 11 case would have a detrimental effect on the reorganization and place undue pressure on the debtor. *Id.* at 1022.

In this circuit, the issue raised in *Otero Mills* has received mixed results. In *Venture Properties, Inc. v. Norwood Group, Inc. (In re Venture Properties, Inc.)*, 37 B.R. 175 (Bankr. D. N.H. 1984), Judge Yacos considered whether to enjoin the sale of property that was owned by the partnership of which the debtor was a general partner. He ruled that *Otero Mills* was "simply wrongly decided." *Id.* at 17. He considered granting such relief a violation of the principle that to enjoy the benefits of bankruptcy a recipient needs to suffer the burdens and that to rule otherwise "is simply to invite a wholesale restructuring of the expectations of those involved in commercial transactions without any indication from Congress that such profound change was intended." *Id. See also In re Supermercado Gamboa, Inc.*, 68 B.R. 230, 234 (Bankr. D. P.R. 1986 (Yacos, J.) (denying injunction based upon lack of specifics regarding harm).

Judge Queenen ruled similarly. *Appollo Molded Products, Inc. v. Kleinman*, 83 B.R. 189 (Bankr. D. Mass. 1988). In that case, the debtor filed an adversary proceeding to obtain an injunction for its chief executive officer who was an accommodation maker on certain notes. Judge Queenan ruled that he had the authority to issue such an injunction. *Id.* at 191. The corporate officer argued that a lawsuit against him would hinder the debtor's reorganization efforts. *Id.* at 192. Judge Queenan ultimately ruled that the Debtor was not entitled to the relief as it had not met the standards for an injunction. After considering *Otero Mills* and other similar cases, Judge Queenan explained his conclusion as follows:

5

> We are unpersuaded that the defendants' lawsuit will so destroy Roper's incentive or so affect him psychologically that he will lose the desire or ability to lead the Debtor through reorganization. One could just as easily surmise that such pressure upon a debtor's principal will galvanize him into exerting his best efforts to bring about an early Chapter 11 plan for the payment of all creditors, including in particular the creditor hounding him on his personal guaranty. Furthermore, if one carries the Debtor's argument to its ultimate conclusion, it goes too far. If one suit on a guaranty is likely to hamper the Debtor's reorganization by diverting its principal's time and energy away from his duties, then *all* major proceedings against the principal, corporate-related or personnel, are likely to do the same. If we accepted such reasoning, we would enjoin such matters as divorce proceeding and other suits against corporate officers on personal matters with the same alacrity as the Debtor urges us to exercise in enjoining the suit on the notes here.
> 
> . . .
> 
> No assertion had been made that [the corporate officer] has any defense to the action.
> 
> . . .
> 
> The Debtor does not attempt to link [the corporate officer]'s personal assets to a plan of reorganization by any indication that Roper will fund the plan.
> 
> . . .
> 
> We do not believe, in any event, that the intention of a debtor's principal to devote personal assets to the reorganization should necessarily have the talismatic effect of shielding him from suit on his personal obligations. We agree with much of the analysis of Judge Hall in *In re Larmar Estates, Inc.*, 5 B.R. 328 (Bankr. E.D. N.Y. 1980), who concluded that the debtor must go further and show that a plan calling for a 100% payment to the creditor is imminent, so that a temporary restraint against the creditor taking action will cause little damage to the creditor. Short of those circumstances, the act of a guarantor or accommodation maker transferring his assets to a debtor in order to facilitate partial payment to the creditor and avoid his own personal liability smacks of a fraudulent transfer

83 B.R. 192-4.[3]

---

[3] In *In re Boston Harbor Marina Co.*, 157 B.R. 726, 729 (Bankr. D. Mass. 1993), Judge Queenan refused to confirm a plan which contained releases of various non-debtor third parties. He explained the statutory bar to non-debtor releases could be lifted in certain limited

Conversely, two courts from this circuit enjoined actions against third party non-debtors that same year. *See Stadium Mgmt Corp. v. Connecticut Bank and Trust Co. (In re Stadium Mgmt Corp.)*, 95 B.R. 264 (D. Mass. 1988) and *Codfish Corp. v. Fed. Deposit Ins. Corp. (In re Codfish Corp.)* 97 B.R. 132 (Bankr. D. P.R. 1988). In *Stadium Mgmt.*, the debtor sought injunctive relief against a creditor who was pursuing an action against a subsidiary of the debtor which owned property abutting 3 sides of the sports stadium which the debtor operated. *Id.* at 265. The Bankruptcy Court entered the injunction and on appeal Judge McNaught agreed with Judge Gabriel that 11 U.S.C. 105 conferred the authority to enter such an injunction. *Id.* at 268. He also affirmed that the injunction was properly granted as the debtor had met the requirements for such relief. As for, *inter alia*, irreparable harm, the Debtor demonstrated that a sale of the property surrounding the stadium would result in a harm to the public in accessing the stadium and a significant detriment to the debtor in operating the stadium. *Id.* at 268-9.

In *Codfish*, the debtor sought to extend the provisions of the automatic stay to apply to the president of the debtor who had guaranteed the debtor's obligations. 97 B.R. at 133. Judge Lamoutte first ruled that he had the authority under § 105 to enjoin actions against guarantors. *Id.* at 135. He also ruled that such relief would be warranted only "if the evidence clearly and convincingly shows that the estate will be substantially and adversely affected if the FDIC

---

circumstances none of which existed in that case. *Id.* at 730-32. In the case of *In re Monarch Capital Corp.*, Case No. 91-41379-JFQ, Judge Queenan confirmed a plan that contained injunctions for various third parties who were instrumental in developing the reorganization plan. *Monarch Life Insurance Co. v. Ropes & Gray*, 65 F.3d 973, 976 (1st Cir. 1995) (affirming later ruling that plan collaterally estopped plaintiff from challenging confirmation containing permanent injunction). Judge Queenan went on to publish a criticism of courts that confirm similar plans. *See, Insider Discharges Are Abusive*, Bankruptcy Court Decisions, Volume 42, Issue 4, December 9, 2003 ("Third-party discharges, except in partnership and mass tort cases, are an abuse of our reorganization process.").

7

continues to prosecute the civil action against [the president]". *Id.* Judge Lamoutte found that the president was one of a handful of people in the world with expertise crucial to the debtor's reorganization and that he had no assets. *Id.* at 136. Based upon those unique circumstances, he entered the injunction. *Id.*

In *In re MacDonald/Associates, Inc.*, 54 B.R. 865 (Bankr. D. R.I. 1985), the creditor had entered into a sales agreement with the debtor and its two principals. *Id.* at 866. The debtor sought to enjoin the creditor's lawsuit against the principals. Judge Votolato ruled that an injunction was appropriate given that the causes of action were identical and a suit against the principals could afford the creditor a collateral estoppel argument against the debtor in a later action. *Id.* at 869. Moreover, the resolution of these claims was central to the reorganization. The principals were crucial employees and were needed to run the business and assist in the development of the plan of reorganization. *Id.*

In *Seybolt v. Bio-Energy of Lincoln, Inc.*, 38 B.R. 123 (Bankr. D. Mass. 1984), Judge Lawless was asked, *inter alia,* to consider whether a creditor could maintain an action against a general partner of the debtor and the individual guarantors. Judge Lawless granted an injunction for the general partner because a successful claim would create an indemnification claim against the debtor and would "destroy the equality of treatment among a debtor's creditors which bankruptcy laws are designed to promote." *Id.* at 127. With respect to the guarantors, he explained that such relief can only be granted when there is an identity of interest between the guarantors and the debtor such that a judgment against the guarantor would have a binding effect on the debtor. *Id.* at 128 (citing *In re Metal Center, Inc.*, 31 B.R. 458, 462 (Bankr. D. Conn. 1983)).

8

A review of the cases from outside of this circuit reveals that this issue generally arises via an adversary proceeding and that an award of an injunction largely depends on the non-debtor third party's position with the debtor and/or degree of financial commitment to the reorganization. For example, in *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting (In re Kham & Nate's Shoes No. 2, Inc.)*, 97 B.R. 420 (Bankr. N.D. Ill. 1989), the debtor sought an injunction for two principals from the collection efforts which a creditor had initiated in state court post-confirmation. The court found that the assets of the individuals were "crucial" to obtaining financing for the reorganization. *Id.* at 429. Based upon a prior finding of bad faith on the part of the creditor, the court also found that there was a strong likelihood that the guarantees were unenforceable. *Id.* As such, the court awarded the debtor the injunctive relief it sought.

In *In re Diaconx, Corp.*, 69 B.R. 343 (Bankr. E.D. Pa. 1987), the debtor sought a preliminary injunction to protect the guarantor of its obligations. The court applied a preliminary injunction standard. *Id.* at 346. With respect to irreparable harm, the court found that a potential foreclosure on the guarantors' home was not harm to the estate or the reorganization particularly since the debtor had not demonstrated that the guarantor was essential to the reorganization. *Id.* at 347. Judge Fox ruled that because, *inter alia*, the non-debtor parties were neither pledging their assets nor providing crucial services, they were not entitled to an injunction. *Id. See also In Monroe Well Service, Inc.*, 67 B.R. 746 (Bankr. E.D. Pa. 1986) (awarding injunction as guarantor provided debtor operating funds).

Several additional cases provide similar fact intensive examples. *See e.g., In re Third Eighty-Ninth Assoc.*, 138 B.R. 144 (S.D. N.Y. 1992) (granting injunction to those who made financial contribution and held crucial position, denying relief to claimants making vague

9

request); *In re Lomas Fin. Corp.*, 117 B.R. 64 (S.D. N.Y. 1990) (granting injunction as non-debtor third parties were critical to reorganization); *Lazarus Burman Assoc. v. Nat'l Westminster Bank USA (In re Lazarus Burman Assoc.)*, 161 B.R. 891 (Bankr. E.D. N.Y. 1993) (granting for non-debtor third parties making significant contributions of money and finances); *In re University Medical Center*, 82 B.R. 754, 758 (Bankr. E.D. Pa. 1988) (denying partners injunction as they failed to show impact of litigation on their job performance); *TRS, Inc. v. Peterson Grain & Brokerage Co.*, 76 B.R. 805 (Bankr. D. Kansas 1987) (granting temporary injunction given that sole managing officer was judgment proof); In *In re Kasual Kreation, Inc.* 54 B.R. 915 (Bankr. S.D. Fla. 1985) ( granting temporary injunction for guarantors to allow them to focus on an upcoming busy retail season); *In re Northlake Bldg. Partners*, 41 B.R. 231 (Bankr. N.D. Ill. 1984) (ruling injunction warranted based upon partner/general manager/guarantor's critical management function and his lack of assets); *In re Lahman Mfg. Co.*, 33 B.R. 681 (Bankr. D. S.D. 1983) (awarding injunction to guarantor who pledged assets to finance reorganization).

    B. Arguments of the Parties

    The issue of a non-debtor third party release arises in this case not by way of a request for an injunction but rather through the Disclosure Statement. The Trustee and Gulf have not objected to the Disclosure Statement based upon a lack of adequate information with respect to the Debtors, *see e.g.* 11 U.S.C. §§ 1125(a)(1) and (b). Their objections address whether the Plan is incapable of confirmation given the requested discharge and release of the Hallams and the lack of information in order to make that determination. It is appropriate for me to consider such objections at this stage. *See e.g. In re Mahoney Hawkes*, 289 B.R. at 294 (citing *In re Bjolmes Realty Trust*, 134 B.R. 1000, 1002 (Bankr. D. Mass. 1991)).

10

As the parties have recognized, I previously ruled that I have authority to enter such orders provided that the plan proponent has met the factors set forth in *In re Master Mortgage*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994). *See In re Mahoney Hawkes, LLP*, 289 B.R. 285, 300 (Bankr. D. Mass.)[4]

Those factors are:

(1) Whether there is an identity of interest between the debtor and the third party such that a suit against the non-debtor is one against the debtor and will deplete the estate;
(2) The non-debtor has contributed substantial assets to the reorganization;
(3) The injunction is essential to the reorganization;
(4) The affected classes have voted in favor of the plan; and
(5) The plan provides a mechanism for the payment of all, or substantially all, of the claims of the class or classes affected by the injunction.

*Id* at 297-8.

In *Mahoney Hawkes*, a liquidating Chapter 11 case of a limited liability law firm partnership, the third-parties who sought injunctive releases were the debtor's insurance company and the partners of the partnership. I ruled that the insurance company was not entitled to the requested relief as it was not offering an asset that was not already property of the estate. As for the partners, I ruled that their proposed contribution appeared not to be substantial and was not essential to a liquidating plan. I sustained the objections and denied the motion to approve the disclosure statement. *Id*. at 304.

The parties dispute the outcome of the application of the *Master Mortgage* factors to the facts in this case. The lawsuit which Gulf has brought against the Hallams, contend the Debtors,

---

[4]The First Circuit recognized the split of authority with respect to this issue in *Monarch Life Insurance Co. V. Ropes & Gray (In re Monarch Life Insurance Co.)*, 65 B.R. F.3d 973, 979 (1st Cir. 1995).

11

is essentially a suit against the Debtors given that the cause of action arises from the same agreement. Gulf contends that there is no identity of interest between the Debtors and the Hallams and that there is no indemnity between the Debtor and the Hallams. Further, Gulf argues, the subject of its attachment is not property of the estate but rather property of the Hallams so were Gulf to prevail no assets of the estate would be depleted.

The Debtors contend that by continuing to work with the Debtors, the Hallams have and will make substantial contributions in order to successfully complete the Debtors' 100% plan. Gulf counters that the Hallams are making no such contribution because they are only committing to continue their work with the Debtors and will retain and subordinate their claims rather than release them.

The Debtors argue that the releases are essential as the Hallams are the co-proponents of the Plan and require the provision. Gulf counters that this representation is insufficient to meet this factor because the release is not essential to the success of the Plan. In support, Gulf points to the fact that the Plan will be funded by the proceeds of the sale of equipment, an exchange of corporate real estate and the cash from the ongoing business. Gulf contends that these sources of revenue do not require a release from the Hallams.

The Debtors further allege that the creditors, with the exception of Gulf, will support the Plan and that the Debtors should be given an opportunity to provide evidence of the same at a confirmation hearing. Gulf contends that two parties have objected to the Plan and it has no indication that other creditors will be willing to support the Plan.

With respect to the fifth factor, the Debtors point to the fact that the Plan provides for 100% payment to all creditors. The Debtors further offer that it would be more efficient to

12

litigate Gulf's claim in this Court rather than to have Gulf pursue its claim in state court at the same time this Court is considering the Debtor's objection to Gulf's claim. Gulf counters that conditions upon which the Debtors must rely to make a 100% payment in a year are tenuous and that the Debtors have offered no special circumstances that warrant preventing them from pursuing their claims against the Hallams. Moreover, Gulf asserts that its damages are not capable of liquidation at this point and it should be able to pursue the Hallams in the event that its losses increase.

C. Discussion

In the cases I have described, the debtors filed an adversary proceeding to request injunctive relief for the non-debtor third parties and the courts decided the issue under the standard for such relief. I cannot decide this matter under that standard, however, as the issue has arisen in the context of the Disclosure Statement and not by way of a request for injunctive relief. Accordingly, I will continue to apply the *Master Mortgage* test. The injunctive relief cases remain relevant to my inquiry, however, as the factors and circumstances in those cases overlap with the legal and factual circumstances I must consider.

The first factor in the *Master Mortgage* test is whether there is an identity of interest between the Debtor and the Hallams such that a suit against the Hallams is one against the Debtor and will deplete the estate. The lawsuit against the Hallams does rest on the same set of facts as Gulf's claims against the Debtor but is an independent claim arising from the Agreement. Any recovery against the Hallams would not deplete assets of the estate.

The cases cited above look to whether a principal of the debtor will be distracted from their work on the reorganization as a result of a separate lawsuit. It appears that this has not been

the effect in this case as the Debtors have not sought injunctive relief for the Hallams up to this point and the Plan has been submitted for confirmation. The lawsuit does not appear complicated. There is some risk that a hearing on the Debtors' objection to Gulf's claim will take place in this Court while the suit against the Hallams is going forward in state court. The Debtors and the Hallams are not without remedies in this regard.

The next factor to consider is whether the Hallams have contributed substantial assets to the reorganization. The parties dispute whether the Hallams' proffered contribution, their continued employment, is a substantial contribution to the reorganization. In *Mahoney Hawkes*, I found the monetary contribution of the partners to be insufficient as there was no description as to how the amount related to their ability to pay. Here, there is likewise no such proffer. I cannot determine whether this is the only asset which the Hallams can afford to contribute to the reorganization. I also have no information upon which to determine whether, similar to *Codfish*, the Hallams are the only persons who could perform their jobs rendering their contribution significant. Moreover, the Hallams' proposed contribution of their "sweat equity" would not be considered new value for other plan purposes. *See Norwest Bank v. Ahlers*, 485 U.S. 197 (1988).

The third factor to consider is whether the third-party release is essential to the reorganization. The Hallams contend that the release is essential because they are co-proponents of the Plan. They have not explained that without the release they will no longer work for the Debtors. In fact, as Judge Queenan explained above, they have every incentive to continue to work for the Debtor and towards the success of the reorganization. I have no evidence that a pending state lawsuit will so consume their time that they cannot perform their job. The fact that absent their release they will not give their imprimatur on the Plan is insufficient. I cannot

conclude that the Debtors have established this factor in their favor.

The fourth factor is whether the affected classes have voted in favor of the Plan. While I cannot make conclusions as to all creditors, it is clear that Gulf will not vote in favor of the Plan.

Lastly, I must decide whether the Plan provides a mechanism for the payment of all, or substantially all, of the claims of the class or classes affected by the injunction. The Plan does provide a mechanism for payment of Gulf's claims although Gulf claims that if additional amounts arise under the Agreement, it will be prevented from the making a claim against either the Hallams or the Debtors. The Debtors dispute that any further claims will arise. As with the fourth factor, I am unable to make a determination on the facts before me.

IV. Conclusion

In *Mahoney Hawkes I*, as most of the courts in the cases above, recognized that the relief which the Debtors seek in this case can be granted only upon a showing of exceptional circumstances and "involves an extraordinary exercise of discretion." 289 B.R. at 299-300. While it is true that the Debtors do not have to establish each of the *Master Mortgage* factors in order to prevail, they have failed to establish any of the factors convincingly. Therefore, they have failed to establish that they are entitled to obtain a discharge for the Hallams via

confirmation of their Plan. Because the Plan is fundamental flawed as proposed, I will enter a separate order denying the Disclosure Statement.

*William C. Hillman*
United States Bankruptcy Judge

Dated: August 5, 2005